ARASTO FARSAD (SBN: 273118)
NANCY WENG (SBN: 251215)
**FARSAD LAW OFFICE, P.C.**
1625 The Alameda, Suite 525
San Jose, CA 95126
Tel: 408-641-9966
Fax: 408-866-7334
Emails: farsadlaw1@gmail.com;
nancy@farsadlaw.com

Attorneys for Debtor / debtor-in-possession

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

In re:

PROPERTY MASTERSHIP EXCEL, LLC,

              Debtor / debtor-in-possession.

Case No.: 23-51330 SLJ
Chapter 11

**DISCLOSURE STATEMENT TO PLAN OF REORGANIZATION DATED JANUARY 15, 2024**

Date:  April 18, 2024
Time: 1:30 p.m.
Place: **\*Hybrid Hearing**: Either in person at 280 S. First Street, **Courtroom 9**, San Jose, CA 95113 **or** by remotely by telephone or video conference[1]

**Chief Judge:  Hon. Stephen L. Johnson**

---

[1] Please see the concurrently filed notice of hearing for instructions on how to attend remotely by either phone or tele-conference.

DISCLOSURE STATEMENT                                                                 23-51330 SLJ

Table of Contents

I. INTRODUCTION ..................................................................................................4
   A. Purpose of This Document
   B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing
   C. Disclaimer

II. BACKGROUND ..................................................................................... 5
I.
   A. Description and History of the Debtor's Business
   B. Management of Debtor and Description of Insiders
   C. Events Leading to Chapter 11 Filing
   D. Significant Events During the Bankruptcy Case
   E. Projected Recovery of Avoidable Transfers
   F. Claims Objections
   G. Current and Historical Financial Conditions

II. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS
    AND EQUITY INTERESTS ..........................................................................7
   A. What is the Purpose of the Plan of Reorganization?
   B. Unclassified Claims
        1. Administrative Expenses
        2. Priority Tax Claims Under Section 507(a)(8)
        3. Priority Unsecured Claims (Sections other than 507(a)(8))
   C. Classes of **IMPAIRED** Claims and Equity Interests
        1. Classes of Secured Claims / CLASS 1
        2. Class of General Unsecured Claims / CLASS 2
        3. Class of Equity Interest Holders (NOT IMPAIRED)
   D. Means of Implementing the Plan
        1. Source of Payments
        2. Post-confirmation Management
   E. Risk Factors and Default Provisions
   F. Executory Contracts and Unexpired Leases
   G. Tax Consequences of Plan

III. CONFIRMATION REQUIREMENTS AND PROCEDURES ...........................14
   A. Who May Vote or Object
        1. What Is an Allowed Claim or an Allowed Equity Interest?
        2. What Is an Impaired Claim or Impaired Equity Interest?
        3. Those *Not* Entitled to Vote
        4. Who Can Vote in More Than One Class
   B. Votes Necessary to Confirm the Plan
        1. Votes Necessary for a Class to Accept the Plan
        2. Treatment of Nonaccepting Classes

C. Liquidation Analysis

D. Feasibility

    1. Ability to Initially Fund Plan

    2. Ability to Make Future Plan Payments and Operate Without Further Reorganization

IV. EFFECT OF CONFIRMATION OF PLAN …………………………………………..17

A. DISCHARGE OF DEBTOR

B. Modification of Plan

C. Final Decree

V. OTHER PLAN PROVISIONS ………………………………………………...…… 18

I.       INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the Chapter 11 case of Property Mastership Excel, LLC (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the Plan of Reorganization (the "Plan") filed by Debtor.  A full copy of the Plan is attached to this Disclosure Statement as **Exhibit A.** Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.

The proposed distributions under the Plan are discussed at pages 7 through 14 of this Disclosure Statement. **General unsecured creditors are identified in Class 2, and will receive a distribution of 100 percent of their allowed claims in one (1) payment made at the close of either a refinance or upon the sale of the Property.[2]**

**A.  Purpose of This Document**

This Disclosure Statement describes:
- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why the Proponent believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

**B.  Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

*1.  Hearing to Approve This Disclosure Statement*

---

[2] The subject property / properties (two vacant lots) are described as: Vacant Lot # 1: 0 Bradbury Drive, Lafayette, CA 94549 APN: APN: 237-420-003 Zoning R-10 / 54,395 sq. ft Entitlements to build 8K sq. ft. estate / home; and Vacant Lot # 2: 00 Bradbury Drive, Lafayette, CA 94549 APN: 237-420-002 / Zoning LR 5 / 93,293 sq. ft. Entitlements to build 7K sq. ft. estate / home.

The hearing at which the Court will determine whether to approve this Disclosure Statement will take place on **April 18, 2024, at 1:30 p.m., in Courtroom 9 at the United States Bankruptcy Court, 280 South First Street, San Jose, CA 95113. (You can appear in person or via Zoom/Tele Conference. Please refer to the Notice of Hearing for more information on how to arrange your appearance.)**

2. *Deadline for Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Farsad Law Office, P.C., 1625 The Alameda, Suite 525, San Jose, CA 95126. See section IV.A., below, for a discussion of voting eligibility requirements.

Your ballot must be received by [TBD] or it will not be counted.

3. *Deadline for Objecting to Confirmation of the Plan*

Objections to Confirmation of the Plan must be filed with the Court and served upon Debtor and Debtor's counsel by [TBD].

4. *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Debtor's counsel, Farsad Law Office, P.C., (attorneys Nancy Weng or Arasto Farsad), 1625 The Alameda, Suite 525, San Jose, CA 95126.

**C. Disclaimer**

This Disclosure Statement, if approved, does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.

**II. BACKGROUND**

**A. Description and History of the Debtor's Business**

On November 15, 2023, the Debtor filed the instant case to stop the attempted foreclosure two parcels of vacant land identified via APN Nos. APN: 237-420-002 and APN: 237-420-003 (the "Property") by a primary / senior mortgage holder (which is the sole secured lien on the Property or properties).

Debtor will be seeking a consensual stipulation to provide a reasonable amount of time to further progress re: the entitlements / plans for two large estates on each parcel. (Approximately 7500-foot homes or "estates" on each parcel.) Entitlements have begun already and the Property

values increase as the plans get further into the final stages. As for unsecured debt, the Debtor does have some but not a significant amount at all. This unsecured debt will be paid as the Property does have a decent amount of equity "as-is" and definitely enough post finalizing the entitlements. Certainly, if the Debtor gets a proper partner to assist or fund building one or both lots, servicing the unsecured debt will not be a problem at all.

### B. Management of Debtor and Description of Insiders

Michael Luu, is the current Owner and Managing Member of the LLC, and was appointed as the responsible individual for Debtor. He has managed the Debtor's estate since the filing of the Chapter 11 Petition. The owners / insiders of the Debtors are their respective interests are:

a. Michael Luu, 100%

### C. Events Leading to Chapter 11 Filing

The primary lienholder (Artes Capital) sought to non-judicially foreclose on the Property and the subject case was filed to stop the attempted foreclosure.

### D. Significant Events during the Bankruptcy Case

1. Debtor filed a motion to employ its general bankruptcy counsel on December 9, 2023 (Dkt No. 17) and the Honorable Court granted the motion on November 28, 2023 (Dkt No. 28).

2. An order designating Michael Luu as the responsible individual was entered on November 20, 2023 (Dkt No. 14).

3. The Debtor does not anticipate any Motions to Value at this time as it is believed that the Property has significant equity above the liens / debts owed. Also, depending on whether a refinance or sale occurs, the Debtor plans to higher appropriate professionals via standard motion (e.g., broker and accountant) as needed as well as a Motion to Authorize Sale on 28-days' notice to all creditors if a sale is the determined route.

4. The claims bar date runs on March 18, 2024 (standard claims) and as of today's date, the only claims filed thus far are:
   i. POC # 1 = Internal Revenue Service, $700.00 (general unsecured)
   ii. POC # 2 = Contra Costa County Tax Collector, $66,311.85
   iii. POC # 3 = Franchise Tax Board, $13,089.56
      a) Unsecured Priority = $3,461.75

b)  Unsecured General = $9,627.81
iv. POC # 4 = Charles P. Rashall, Trustee (Mortgage / Lien), $621,156.32

## E.  Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions at this time.

## F.  Claim Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

## G.  Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are as follows: The subject property / properties (two vacant lots) are described as: Vacant Lot # 1: 0 Bradbury Drive, Lafayette, CA 94549 APN: APN: 237-420-003 Zoning R-10 / 54,395 sq. ft Entitlements to build 8K sq. ft. estate / home; and Vacant Lot # 2: 00 Bradbury Drive, Lafayette, CA 94549 APN: 237-420-002 / Zoning LR 5 / 93,293 sq. ft. Entitlements to build 7K sq. ft. estate / home.

Current value "as-is" of Lot # 1 = $600,000.00
Current value "as-is" of Lot # 2 = $550,000.00

The Debtor's monthly operating reports are being filed but there is NO INCOME. The case has been funded (for minimal expenses, such as hazard insurance and OUST fees) by owner / member Michael Luu (personally) thus far.

## III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.  What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B.  Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has not placed the following claims in any class:

1. **Administrative Expenses**

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under § 507(a) (2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment. The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| TYPE | ESTIMATED AMOUNT OWED | PROPOSED TREATMENT |
|---|---|---|
| Attorneys' Fees estimated to be approved by the Court (Note: the Firm is holding $10,000.00 in its operational account and will seek to have these funds paid to them post an application for fees and a Court order) | $20,000.00 | Payment in full after a Court order for fees / costs only is approved |
| United States Trustee | $650.00 or based on distributions | Payment in full of the amount(s) on the Plan's Effective Date. |
| Realtor / Broker (if sale occurs / necessary) | Based on a Court approved listing agreement | Only will be paid after Court approval of compensation after a formal application is filed / heard |
| CPA / Accountant (if sale occurs / necessary) | Based on Court approved contract | Only will be paid after Court approval of compensation after a formal application is filed / heard |
| TOTAL | $20,650.00 | |

2. **Priority Tax Claims Under Section 507(a)(8)**

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a

period not exceeding 5 years from the order of relief. The following chart lists the Debtor's estimated § 507(a) (8) priority tax claims and their proposed treatment under the Plan:

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| IRS<br>P.O. Box 7346<br>Philadelphia, PA 19101-7346 | NONE | N/A | N/A | N/A |
| FRANCHISE TAX BOARD BANKRUPTCY SECTION MS A340 PO BOX 2952 SACRAMENTO CA 95812 **(POC # 3)** | $3,461.75 | 7% | $3,461.75 | 1 |
| TOTAL(S) | $3,461.75 | 7% | $3,461.75 | 1 |

3. **Priority Unsecured Claims (Sections other than 507(a)(8))**

Certain priority claims that are referred to in §§ 507(a) (1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§ 507(a) (1), (4), (5), (6), and (a) (7) of the Code and their proposed treatment under the Plan: **NONE YET.**

C. **Classes of IMPAIRED Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1. **Classes of Secured Claims / Class 1**

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim. The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

**Property to be Sold.**

| Class | Name of Creditor | Collateral | Value of Collateral | Monthly Payment |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| 1A | Charles P Rashall Trustee of the Charles P Rashall Living Trust Dated 4-14-99 c/o FCI Lender Services PO Box 273370 Anaheim Hills CA 92 (1ST LIEN) (POC # 4) **(Balance: ~$621,156.32)** | The "Property" | $1,150,000.00 | Claim to be paid in full upon refi or sale of Property |
| 1B | City of Lafayette Dept. of Code Enforcement 3675 Mt Diablo Blvd # 210 Lafayette CA 94549 (No POC yet) **(Balance: $0.00[3])** | The "Property" | $1,150,000.00 | Claim to be paid in full upon refi or sale of Property |
| 1C | Contra Costa County Assessor's Office P.O. Box 631 Fairfield, CA 94533 (Property Taxes) (POC # 2) **(Balance: ~$66,311.85)** | The "Property" | $1,150,000.00 | Claim to be paid in full upon refi or sale of Property |
| TOTAL(S) | **$687,468.17** | | $1,150,000.00 | Claim to be paid in full upon refi or sale of Property |

Debtor will refinance **or** sell the above collateral by **June 1, 2024**, paying the above secured creditors from the proceeds of the sale. **Debtor will file a motion for approval of any such sale on 28 days' notice to lien holders unless the Plan is confirmed prior to the sale. In that case, the Debtor will provide the title company handling the transaction a copy of the Plan and the confirmation order to allow the transaction to close without a Motion.**

---

[3] The Debtor is listing the Code Enforcement division out of caution as there may be a small bill owed for clean-up on the lot(s) that was needed and completed.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan. **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

**2. Class of General Unsecured Claims / Class 2**

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. The following chart identifies the Plan's proposed treatment of Class 8 which contains general unsecured claims against the Debtor:

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | Monthly Payment |
|---|---|---|---|---|
| JESUS BEDOLLA<br>1054 Walnut Woods<br>San Jose CA 95122<br><br>(Weed abatement / landscaping) (NO POC yet) | $8,000.00 | N | $8,000.00 | $0.00 (to be paid in full upon refi or sale of Property) |
| LUIS LEYVA<br>286 S. 24th Street<br>San Jose CA 95122<br><br>(Landscaping / possible debt owed) (NO POC yet) | $5,000.00 | N | $5,000.00 | $0.00 (to be paid in full upon refi or sale of Property) |
| FRANCHISE TAX BOARD<br>BANKRUPTCY SECTION<br>MS A340<br>PO BOX 2952<br>SACRAMENTO CA 95812<br><br>**(POC # 3)** | $9,627.81 | N | $9,627.81 | $0.00 (to be paid in full upon refi or sale of Property) |
| IRS<br>P.O. Box 7346<br>Philadelphia, PA 19101-7346<br><br>**(POC # 1)** | $700.00 | N | $700.00 | $0.00 (to be paid in full upon refi or sale of Property) |
| **TOTAL(S)** | $23,327.81 | N | $23,327.81 | $0.00 (to be paid in full upon refi or sale of Property) |

Allowed claims of general unsecured creditors (including allowed claims of creditors whose executory contracts or unexpired leases are being rejected under this Plan) shall be paid as follows:

**Percent Plan.** Creditors will receive **100 percent of their allowed claims in one (1) payment made at the close of escrow of either a refinance or sale of the Property.**

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan. **This class is impaired and is entitled to vote on confirmation of the Plan.** Debtor has indicated above whether a particular claim is disputed.

**3.** **Class of Equity Interest Holders**

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company ("LLC"), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder. The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

**The current Equity Interest Holders:**
a. Michael Luu, 100%

| Class Number | Description | Impairment | Treatment |
|---|---|---|---|
| 3 | All the above named EIH's, with their respective ownership interested as listed by percentages | Unimpaired | Distribution of the net equity after a sale / project completion to the sole owner / EIH |

**D. Means of Implementing the Plan**

*1. Source of Payments*

Payments and distributions under the Plan will be funded by the following: The refinance or sale of the Property on or before June 1, 2024.

*2. Post-Confirmation Management*

The Post-Confirmation Manager(s) of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|---|---|---|---|---|
| MICHAEL LUU | Member | Yes | Manager | None |

### E. Risk Factors and Default Provisions

The Property (comprised of both vacant lots) is worth $1,150,000.00 "as-is"-if not more. There is an adequate cushion for both the secured and unsecured creditors whose claims total approximately **$710,795.98 (secured debt of ~$687,468.17 and general unsecured debt of ~$23,327.81)** as listed above. The Debtor and its sole owner / member however, would prefer a refinance or buyout to pay off all debts and start fresh to finish one or both lots / projects as it would net him significantly more in profit than a sale as-is which would eliminate all debt but leave only a couple hundred thousand in profit for all of the efforts to date.

Upon Debtor's default in making any payments required by the Plan of Reorganization (by failing to refinance or sell by June 1, 2024 to pay off the debts owed per the Plan), said Creditors shall have their state law remedies restored re: collection activity / seeking relief.

### F. Executory Contracts and Unexpired Leases

The Plan, filed concurrently herewith, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. The Plan also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed on the Plan will be rejected. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

### G. Tax Consequences of Plan

**Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.**

The following are the anticipated tax consequences of the Plan:

(1) Debtor proposes to pay all priority tax claims in full upon the sale of the Property as will be assessed by an employed CPA / accountant.

(2) Creditors should consult with a tax professional to determine the general tax consequences of any discharge and/or the receipt of Plan consideration (i.e., payment of their claims) after the Plan's confirmation.

## IV. CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that:

a. the Plan must be proposed in good faith;
b. at least one impaired class of claims must accept the plan, without counting votes of insiders;
c. the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and
d. the Plan must be feasible.

**These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.**

### A. Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that **Classes 1 AND 2** are impaired (as stated above) and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent has noted which classes or creditors he believes are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

*1. What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.

When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case is January 30, 2024.***

*2. What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is impaired under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

*3. Those **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are not entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;
- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.
- holders of claims or equity interests in unimpaired classes;
- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and
- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;
- administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan [and to the Adequacy of the Disclosure Statement].***

*4. Who Can Vote in More Than One Class*

Case: 23-51330  Doc# 34  Filed: 01/19/24  Entered: 01/19/24 15:32:32  Page 15 of 35

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

## B. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later.

### 1. Votes Necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan. A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### 2. Treatment of Non-accepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a) (8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

## C. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as **Exhibit C**.

## D. Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

*1. Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand (from the Sale of the Property) on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the Effective Date of the Plan and the sources of that cash are attached to this disclosure statement as **Exhibit D.**

*2. Ability to Make Future Plan Payments and Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments. The Plan Proponent has provided projected financial information. Those projections are listed in **Exhibit E**.

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, of: **Not applicable as this is a Refi / Sale Plan and all claims shall be paid in full upon the refinance or sale of the Property**. (You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.)

## V. EFFECT OF CONFIRMATION OF PLAN

### A. DISCHARGE OF DEBTOR

On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B). After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

### B. Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan. The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

## C. Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## VI. OTHER PLAN PROVISIONS

None.

RESPECTFULLY SUBMITTED,

Dated: January 17, 2024

_/s/ Michael Luu_
MICHAEL LUU (Principal of the Debtor)

**Exhibit A - Copy of Proposed Plan of Reorganization**

# United States Bankruptcy Court
## <u>Northern</u> District of <u>California</u>

In re: PROPERTY MASTERSHIP EXCEL, LLC, Case <u>No.  23-51330 SLJ</u>
Debtor

Chapter 11

## <u>PROPERTY MASTERSHIP EXCEL, LLC'S  PLAN OF REORGANIZATION, DATED JANUARY 15, 2024</u>

## ARTICLE I
## <u>SUMMARY</u>

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of <u>PROPERTY MASTERSHIP EXCEL, LLC'S</u> (the "Debtor") from the sale of Debtor's real property / properties (two vacant lots) which are described as:

1.  Vacant Lot # 1: 0 Bradbury Drive, Lafayette, CA 94549 APN: APN: 237-420-003 Zoning R-10 / 54,395 sq. ft Entitlements to build 8K sq. ft. estate / home; and

2.  Vacant Lot # 2: 00 Bradbury Drive, Lafayette, CA 94549 APN: 237-420-002 / Zoning LR 5 / 93,293 sq. ft. Entitlements to build 7K sq. ft. estate / home.

Hereinafter, both lots being referred to as the "Property".

This Plan provides for **3 classes of secured claims; 1 class of unsecured claims; and 1 class of equity security holders**.  Unsecured creditors holding allowed claims will receive distributions which the Proponent of this Plan has valued at **100 cents** on the dollar. This Plan also provides for the payment of administrative and priority claims in full upon the sale of Debtor's Property located at

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim.  A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II
## <u>CLASSIFICATION OF CLAIMS AND INTERESTS</u>

2.01        <u>Unclassified Claims.</u>
1. Administrative Claims
2. Priority Tax Claims Under Section 507(a)(8).
3. Priority Unsecured Claims (Sections other than 507(a)(8))

2.02          **Class 1.**  The claim of <u>*see below*</u>to the extent allowed as a secured claim under §506 of the Code.

  <u>Class 1A</u>   Charles P Rashall Trustee of the Charles P Rashall Living Trust Dated 4-14-99 c/o FCI Lender Services (1st Lien)

  <u>Class 1B</u>   City of Lafayette Dept. of Code Enforcement

  <u>Class 1C</u>   Contra Costa County Assessor's Office

2.03          **Class 2.**  All General Unsecured Claims.
2.04          **Class 3.**  Equity interests of the Debtor

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
## <u>U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS</u>

  3.01 <u>Administrative Expense Claims</u>.   Each holder of an administrative expense claim allowed under § 503 of the Code [and a "gap" claim in an involuntary case allowed under § 502(f) of the Code] will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

  3.02 <u>Priority Tax Claims</u>.   Each holder of a priority tax claim will be paid pursuant to the requirements of the Code, which is the present value of said claim, in regular installments paid over a period of time not to exceed 5 years from the order of relief aka petition date. As for Sections other than 507(a)(8), they shall receive cash on the effective date of the Plan equal to the allowed amount of such claim unless they agree otherwise.

  3.03 <u>United States Trustee Fees</u>.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE
## IV
## <u>TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN</u>

  4.01 Claims and interests shall be treated as follows under this Plan:

## A. **CLASS 1 SECURED AND IMPAIRED CLAIMS**

| Class | Name of Creditor | Collateral | Value of Collateral | Monthly Payment |
|---|---|---|---|---|
| 1A | Charles P Rashall<br><br>Trustee of the Charles P Rashall Living Trust Dated 4-14-99<br><br>c/o FCI Lender Services<br><br>PO Box 273370 Anaheim Hills CA 92<br><br><br>(1ST LIEN)<br><br>(POC # 4)<br>**(Balance: ~$621,156.32)** | The "Property" | $1,150,000.00 | Claim to be paid in full upon refi or sale of Property |
| 1B | City of Lafayette Dept. of Code Enforcement 3675 Mt Diablo Blvd # 210 Lafayette CA 94549<br><br>(No POC yet)<br>**(Balance: $0.00[1])** | The "Property" | $1,150,000.00 | Claim to be paid in full upon refi or sale of Property |
| 1C | Contra Costa County Assessor's Office<br><br>P.O. Box 631 Fairfield, CA 94533<br><br>(Property Taxes)<br>(POC # 2)<br>**(Balance: ~$66,311.85)** | The "Property" | $1,150,000.00 | Claim to be paid in full upon refi or sale of Property |

---

[1] The Debtor is listing the Code Enforcement division out of caution as there may be a small bill owed for clean-up on the lot(s) that was needed and completed.

| TOTAL(S) | **$687,468.17** | | $1,150,000.00 | Claim to be paid in full upon refi or sale of Property |
|----------|-----------------|--|---------------|-------|

## B. CLASS 2 GENERAL UNSECURED AND IMPAIRED CLAIMS

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | Monthly Payment |
|------------------|-----------------|--------------|-------------------|-----------------|
| JESUS BEDOLLA<br>1054 Walnut Woods<br>San Jose CA 95122<br><br>(Weed abatement / landscaping) (NO POC yet) | $8,000.00 | N | $8,000.00 | $0.00 (to be paid in full upon refi or sale of Property) |
| LUIS LEYVA<br>286 S. 24th Street<br>San Jose CA 95122<br><br>(Landscaping / possible debt owed) (NO POC yet) | $5,000.00 | N | $5,000.00 | $0.00 (to be paid in full upon refi or sale of Property) |
| FRANCHISE TAX BOARD<br><br>BANKRUPTCY SECTION<br>MS A340<br>PO BOX 2952<br>SACRAMENTO CA 95812<br><br>**(POC # 3)** | $9,627.81 | N | $9,627.81 | $0.00 (to be paid in full upon refi or sale of Property) |
| IRS<br><br>P.O. Box 7346<br>Philadelphia, PA 19101-7346<br><br>**(POC # 1)** | $700.00 | N | $700.00 | $0.00 (to be paid in full upon refi or sale of Property) |

| TOTAL(S) | $23,327.81 | N | $23,327.81 | $0.00 (to be paid in full upon refi or sale of Property) |
|----------|-----------|---|-----------|----------|

## C. CLASS 3 EQUITY SECURITY HOLDERS

| Equity Security Holders of the Debtor (only Michael Luu, 100% Owner and Manager) | Unimpaired | Distribution of the net equity after a sale / project completion to the sole owner / EIH |
|---|---|---|

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01   Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02   Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed [by a final non-appealable order].

5.03   Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### N/A

6.01   Assumed Executory Contracts and Unexpired Leases.

(a)   The Debtor assumes the following executory contracts and/or unexpired leases effective upon the Effective Date of the Plan: **NONE.**

(b)   The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the effective date of this Plan. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than **30** days after the date of the order confirming this Plan.

**ARTICLE VII**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

7.01    <u>Means for Implementation</u>. Debtor will refinance **<u>or</u>** sell the above collateral by **<u>June 1, 2024</u>**, paying the above secured creditors from the proceeds of the sale. **<u>Debtor will file a motion for approval of any such sale on 28 days' notice to lien holders unless the Plan is confirmed prior to the sale.  In that case, the Debtor will provide the title company handling the transaction a copy of the Plan and the confirmation order to allow the transaction to close without a Motion.</u>**

**ARTICLE VIII**
**GENERAL PROVISIONS**

8.01    <u>Definitions and Rules of Construction</u>.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: **NONE.**

8.02    <u>Effective Date of Plan</u>. The effective date of this Plan is the first business day following the date that is fourteen days after the entry of the order of confirmation.  If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

8.03    <u>Severability.</u>  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04    <u>Binding Effect</u>.    The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05    <u>Captions</u>.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06    <u>Controlling Effect</u>.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07    <u>Corporate Governance</u>. The Debtor is a corporation and the Articles of the Corporation have been affixed to the Disclosure Statement as an Exhibit as required by § 1123(a)(6) of the Code.

## ARTICLE IX
## NO DISCHARGE OF DEBTOR

9.01    <u>No Discharge.</u>  In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

## ARTICLE X
## <u>OTHER PROVISIONS</u>

### NONE

Dated: January 15, 2024

Respectfully submitted,

*By:*    */s/ Michael Luu*
The Plan Proponent

*By:*    */s/ Arasto Farsad*
Attorney for the Plan Proponent

**Exhibit B – Most recently Filed Post-Petition Operating Report**

**Fill in this information to identify the case:**

Debtor Name  PROPERTY MASTERSHIP EXCEL LLC

United States Bankruptcy Court for the: Northern District of California

Case number: 23-51330

☐ Check if this is an
amended filing

## Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11          12/17

Month:  11/30/2023

Date report filed:  12/20/2023
MM / DD / YYYY

Line of business:  property

NAISC code: _____

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party:  MICHAEL LUU

Original signature of responsible party  /s/ Michael Luu

Printed name of responsible party  Michael Luu

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

| | | Yes | No | N/A |
|---|---|---|---|---|
| | **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*.** | | | |
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☐ | ☐ | ☑ |
| 4. | Did you pay your employees on time? | ☐ | ☐ | ☑ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☐ | ☐ | ☑ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☐ | ☑ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☐ | ☐ | ☑ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☑ | ☐ | ☐ |
| 9. | Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |
| | **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*.** | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

17. Have you paid any bills you owed before you filed bankruptcy?  ☐ ☑ ☐

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?  ☐ ☑ ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

$ _____ 0.00

20. **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here.

$ _____ 0.00

21. **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

Report the total from *Exhibit D* here.

− $ _____ 0.00

22. **Net cash flow**

Subtract line 21 from line 20 and report the result here.
This amount may be different from what you may have calculated as *net profit*.

+ $ _____ 0.00

23. **Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here.

Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

= $ _____ 0.00

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**

*(Exhibit E)*

$ _____ 0.00

Case: 23-51330    Doc# 29    Filed: 12/19/23    Entered: 12/19/23 13:32:06    Page 29 of 4
35

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy. Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**        $ _____ 0.00

    *(Exhibit F)*

## 5. Employees

26. What was the number of employees when the case was filed?      0

27. What is the number of employees as of the date of this monthly report?      0

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?    $ _____ 0.00

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?    $ _____ 0.00

30. How much have you paid this month in other professional fees?    $ _____ 0.00

31. How much have you paid in total other professional fees since filing the case?    $ _____ 0.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

|  | Column A | | Column B | | Column C |
|---|---|---|---|---|---|
|  | **Projected** | − | **Actual** | = | **Difference** |
|  | Copy lines 35-37 from the previous month's report. |  | Copy lines 20-22 of this report. |  | Subtract Column B from Column A. |
| 32. **Cash receipts** | $ 0.00 | − | $ 0.00 | = | $ 0.00 |
| 33. **Cash disbursements** | $ 0.00 | − | $ 0.00 | = | $ 0.00 |
| 34. **Net cash flow** | $ 0.00 | − | $ | = | $ 0.00 |

35. Total projected cash receipts for the next month:    $ _____ 0.00

36. Total projected cash disbursements for the next month:    = $ _____ 0.00

37. Total projected net cash flow for the next month:    = $ _____ 0.00

Case: 23-51330    Doc# 29    Filed: 02/20/24    Entered: 02/20/24 13:32:06    Page 30 of 4

35

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☐  38.  Bank statements for each open account (redact all but the last 4 digits of account numbers).

☐  39.  Bank reconciliation reports for each account.

☐  40.  Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐  41.  Budget, projection, or forecast reports.

☐  42.  Project, job costing, or work-in-progress reports.

**Exhibit C – Liquidation Analysis**

**Plan Proponent's Estimated Liquidation Value of Assets**

| | |
|---|---|
| **a. Cash on Hand** | **$0.00** |
| **b. Accounts Receivable** | **$0.00** |
| **c. Inventory** | **$0.00** |
| **d. Office furniture and Equipment** | **$0.00** |
| **e. Machinery & equipment** | **$0.00** |
| **f. Automobiles** | **$0.00** |
| **g. Building and Land** | **$1,150,000.00** |
| **h. Customer List** | **N/A** |
| **i. Investment Property (such as stocks, bonds or other financial assets)** | **N/A** |
| **j. Lawsuits or other claims against third parties** | **N/A** |
| **k. Other intangibles (such as avoiding action powers)** | **N/A** |
| **Total Assets at Liquidation Value** | **$1,150,000.00** |

**$710,795.98 (secured debt of ~$687,468.17 and general unsecured debt of ~$23,327.81)**

| | | |
|---|---|---|
| **Less:** | | |
| Closing costs/Commission | **($34,500.00) (3% total)** | |
| **Subtotal:** | $1,115,500.00 | |
| **Less:** | | |
| Secured Creditors' Recoveries | **($687,468.17)** | |
| **Subtotal:** | $428,031.83 | |
| **Less:** | | |
| Unsecured claims | **($23,327.81)** | |
| **Subtotal:** | $425,704.02 | |
| **Less:** | | |
| Capital gains taxes at 20% for long term capital gains | **($81,940.80)** | |
| **Subtotal:** | $343,763.22 | |
| **Less:** | | |
| Chapter 7 Trustee Fees and Expenses | **($5,000.00)** | |
| **Subtotal:** | $338,763.22 | |
| **Less:** | | |
| Chapter 11 Administrative Expenses | **($15,000.00)** | |
| ***$25K est., but $10K in the law office operational account** | | |
| **Subtotal:** | $323,763.22 | |
| **Less:** | | |

Priority claims, excluding administrative expense claims    **($3,461.75)**

**NET TO DEBTOR'S PRINCIPAL =**      **$320,301.47**

**Percentage of Claims Which Unsecured Creditors Will Receive or Retain under the Plan: <u>100%.</u>**

**Percentage of Claims Which Unsecured Creditors Will Receive or Retain under a Liquidation Analysis: <u>100%.</u>**

**Exhibit D – Cash on hand on the effective date of the Plan**

**N/A**

**Cash on hand on effective date of the Plan:** _____

**Less:**

      Amount of administrative expenses payable _____
      On Effective Date

      Amount of statutory costs and charges

      Amount of cure payments for executory contracts

      Other Plan Payments due on effective date of the Plan

      Balance after paying these amounts:

The sources of the cash Debtor will have on hand by the effective date of the Plan are estimated as follows:

      Cash in DIP account as of _____-         _____

      Additional cash Debtor will anticipate
      Accumulate from net earnings between now
      and effective date of the Plan and basis for
      these projections are as follows:

_____

      Borrowing (terms of repayment: N/A)

      Capital Contributions

      Other

Total:                                 _____

**Exhibit E – Projections as Flow and Earnings for Post-Confirmation Period**

**N/A**